**BURKE–PARSONS–BOWLBY CORPORATION**

v.

**APPALACHIAN LOG HOMES, INC.**

Civ. No. 3–86–512.

United States District Court, E.D. Tennessee, N.D.

Nov. 30, 1987.

Cecilia S. Lambert and David E. Rodgers of Kramer, Rayson, McVeigh, Leake & Rodgers, Knoxville, Tenn., for plaintiff.

W.P. Boone Dougherty, Knoxville, Tenn., for defendant.

### ORDER

HULL, Chief Judge.

This action for trademark infringement came before the Court for trial, without the intervention of a jury, on September 24, 1987. The relevant facts are largely undisputed.

Plaintiff Burke–Parsons–Bowlby Corporation [BPB], a Virginia corporation, has a duly registered trademark "Appalachian Log Structures" which it uses in relation to its manufacture of log homes and building components. It seeks to enjoin the defendant, Appalachian Log Homes, Inc., a Tennessee corporation, from selling its log buildings under the name "Appalachian Log Homes."

BPB made its first sale of a log residence under the name Appalachian Log Structures in June of 1979, and since January of

1980, has advertised its products on a regular basis in such journals as the *Log Home Guide, Country Homes, The Log Home Annual, Mother Earth News, Alternative Housing Builder*, and *Better Building Ideas*. It has also advertised in trade shows such as the Home Show in Knoxville, Tennessee, in April of 1981. BPB established a Tennessee dealership for its log buildings in Seymour, Tennessee, in June of 1981, and also a Florida dealership in New Smyrna Beach in that month.

Just a few months later, in August of 1981, the defendant began using the name Appalachian Log Homes. In November of 1981, the defendant was incorporated by a Larry Love and Olive Jess, both from East Tennessee, and financed by a Mr. Ken Winter from New Smyrna Beach, Florida. There was no evidence that the defendant had knowledge of the plaintiff's name nor that it selected its name with the intent to capitalize on the plaintiff's advertising.

In December of 1981, BPB applied for a trademark for the term "Appalachian Log Structures" for the trademark classification of building and construction materials. The Patent and Trademark Office requested evidence of secondary meaning which BPB furnished by supplying proof of its sales and advertising [Exh. 7]. A valid certificate of registration on the principal register was granted pursuant to 15 U.S.C. § 1052(f) (established secondary meaning) on August 30, 1983 [Exh. 8].

Considerable energy was expended at trial in an attempt to distinguish the products of the parties. BPB manufactures primarily pre-cut, round-log buildings. The defendant specializes in hand-hewn square logs. Nevertheless, the Court finds, as a matter of law, that the parties manufacture highly similar products which compete for the same buying public in the same geographical areas. The likelihood of confusion between their products appears to be quite high. And, in fact, plaintiff was able to show some evidence of actual confusion in the home buying public and in the industry. However, no actual log home customers testified and there was no indication of any market survey.

The defendant Appalachian Log Homes, Inc., did not deny that the plaintiff was the first to use the term "Appalachian Log" in connection with the manufacture and sale of log residences; nor did it deny that it attempted to reach the same buying public through the same modes of advertising in the same geographical regions of the nation with a strikingly similar product name. While it challenged the admissibility and credibility of some of the plaintiff's evidence of actual confusion between their products, the thrust of its defense was a challenge to the validity of the plaintiff's trademark.

Unquestionably, this lawsuit turns on whether or not the plaintiff's trademark, which admittedly consists of a geographically descriptive term combined with the generic term "log" is entitled to trademark protection. If the mark is valid, the plaintiff is entitled to injunctive relief.

With regard to the registration of trademarks, the Lanham Act provides, in pertinent part, as follows:

No trademark by which the goods of the applicant may be distinguished from the goods of others shall be refused registration on the principal register on account of its nature unless it—....

(e) Consists of a mark which, (1) when applied to the goods of the applicant is merely descriptive or deceptively misdescriptive of them, or (2) when applied to the goods of the applicant is primarily geographically descriptive or deceptively misdescriptive of them....

(f) Except as expressly excluded in paragraphs (a)—(d) of this section, nothing in this chapter shall prevent the registration of a mark used by the applicant which has become distinctive of the applicant's goods and commerce. The Commissioner may accept as prima facie evidence that the mark has become distinctive, as applied to the applicant's goods and commerce, proof of substantially exclusive and continuous use thereof as a mark by the applicant in commerce for the five years next preceding the date of

the filing of the application for its registration.

15 U.S.C. § 1052.

■ Once a party has received a registered trademark, he has the benefit of a statutory presumption that his trademark is valid.

Any registration ... of a mark registered on the principal register ... and owned by a party to an action shall be ... prima facie evidence of registrant's exclusive right to use the registered mark in commerce on the goods or services specified in the registration ... but shall not preclude an opposing party from proving any legal or equitable defense or defect which might have been asserted if such mark had not been registered.

15 U.S.C. § 1115(a).

The presumption created by the Lanham Act is a rebuttable one which shifts the burden of proof to the party questioning a trademark's validity. *WSM, Inc. v. Hilton,* 724 F.2d 1320, 1326 (8th Cir.1984).

In this action, Appalachian Log Homes, Inc., met this burden with proof that the word "Appalachian" is a geographically descriptive term widely used as a business name in this region; with the stipulated agreement that the term "log" is a purely generic term; with evidence that the word "structure" is another commonly used descriptive term; and some evidence that the phrase "Appalachian Log Structures", when taken as a whole, brings to mind log buildings from a particular region rather than the products of any particular manufacturer.

While there was no direct evidence of what the term means to the buying public, it would seem selfevident that the phrase "Appalachian Log Structures" is accurately descriptive of a type of rustic architecture associated with our geographical region of the country. It imparts information directly rather like "Maine Lobsters" or "New England Clam Chowder." If a mark imparts information directly, it is said to be descriptive. *See Anheuser–Busch, Inc. v. Stroh Brewery Co.,* 587 F.Supp. 330, 335 (E.D.Mo.1984).

■ A trademark that is merely descriptive will not be protected against an alleged infringer unless the senior user shows that the mark has acquired "secondary meaning." "Secondary meaning" involves a showing that the public identifies the trademark with a particular source rather than the product. *Truckstops Corp. of America v. C–Poultry Co. Ltd.,* 596 F.Supp. 1094, 1097 (M.D.Tenn.1983).

■ The only evidence that BPB's trademark might have acquired such secondary meaning was evidence of plaintiff's considerable advertising efforts and its steadily increasing sales. It appears that, in a few short years, BPB has moved into the top fifteen percent of log residence manufacturers in the United States. However, this proof is offset by the fact that, even among prospective customers, and others involved in the log home industry, there is considerable confusion between these two companies. Nor does BPB have the advantage of having used its trademark for a long time before the defendant came into the business. Length of time in which a mark has been in use is highly relevant to the question of secondary meaning. *See Hot Shoppes, Inc. v. Hot Shoppe, Inc.,* 203 F.Supp. 777 (M.D.N.C. 1962).

The parties to this action entered the business at approximately the same time. Each chose a very obvious, descriptive business name. There is no evidence that Appalachian Log Homes, Inc. intended to take advantage of the more extensive advertising of BPB. Nor does the defendant appear to be attempting to pass its products off as those of the plaintiff. Appalachian Log Homes uses hand-hewn, hand-crafted square logs that apparently have not been treated in any way. BPB, on the other hand, uses pre-cut, round logs which have been pressure treated. Apparently, to those making serious inquiries into the possibilities of building a log home, these distinctions are significant.

In the absence of any indication that BPB's trademark has achieved secondary meaning in the minds of the purchasing

public, plaintiff cannot be granted the injunctive relief it seeks.

Accordingly, judgment will enter on behalf of the defendant, Appalachian Log Homes, Inc., and the plaintiff will take nothing in this case.